UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -against- | |
| TYRONE HARDY, | |
| Defendant. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 07/02/2024

24 Mag. 1595 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Defendant, Tyrone Hardy, appeals the detention order issued by the Honorable Sarah L. Cave during a bail hearing on April 23, 2024. *See* ECF No. 4; Hearing Tr., ECF No. 12. On June 5, 2024, the Court held a bail appeal hearing and reserved decision. Dkt. Entry 6/5/2024; Appeal Tr., ECF No. 14. For the reasons stated below, the Court AFFIRMS Judge Cave's order.

## BACKGROUND

The Government alleges that Hardy committed "a series of robberies and attempted robberies" between April 3 and April 20, 2024. Compl. ¶ 8, ECF No. 1.

1. On April 3, 2024, Hardy pointed a firearm at an East Harlem 7-Eleven employee, demanded all of the cash in the register, and then fled on foot. *Id.* ¶ 9(a).

2. On April 4, 2024, Hardy brandished a firearm at an employee in an East Village stationery store, taking all of the cash in the register before fleeing. *Id.* ¶ 9(b).

3. On April 5, 2024, Hardy robbed a Harlem Subway restaurant, pointing a firearm at an employee and removing almost $1,500 in cash from the register (the "Subway Robbery"). *Id.* ¶ 9(c)–(d).

4. On April 10, 2024, Hardy attempted to rob an Upper West Side Dunkin (the "Dunkin Robbery"). *Id.* ¶ 9(e). When Hardy pulled out his firearm, an employee "grabbed the firearm from Hardy's hand and pointed it [at] Hardy, who in turn chased [the employee] to the back of the store." *Id.* Hardy fled on foot after the employee locked himself in the storage area. *Id.*

5. On April 20, 2024, Hardy robbed a Kips Bay 7-Eleven, pointing another firearm at an employee and demanding cash. *Id.* ¶ 9(f).

Security cameras captured Hardy committing each robbery or attempted robbery.  *Id.* ¶¶ 8–10.

On April 20, 2024, officers arrested Hardy in his car.  *Id.* ¶ 11(a).  A search of the car uncovered, among other things, an unloaded Ruger 9mm pistol and a magazine loaded with 9mm ammunition, as well as a stack of cash in the glove box.  *Id.* ¶ 11(c).  Hardy admitted to participating in the five robberies or attempted robberies, identified himself in security camera photographs, and admitted to possessing a firearm during the crimes.  *Id.* ¶ 11(d).  He also admitted to committing eight additional armed robberies in Manhattan, Queens, and the Bronx during the April 3 to 20 time period.  Gov. Mem. at 10–11, ECF No. 11.  Hardy "described the method by which he chose the locations he robbed, which included a Google search and calculation of travel time to and from."  *Id.* at 10.  And, he told officers: "After the first time I had that gun in my hand and did that first 7-11, I was like wow, this is good money . . . I just kept going."  *Id.*

On April 23, 2024, Hardy was presented before Judge Cave in connection with four counts of Hobbs Act robbery under 18 U.S.C. § 1951, one count of attempted Hobbs Act robbery, and firearm use or possession under 18 U.S.C. § 924(c).  *See* Hearing Tr.; Compl. ¶¶ 1–6.  At his presentment, Hardy requested release on bail with conditions as recommended by Pretrial Services.  Hearing Tr. at 13:21–25.  After considering the factors set forth in 18 U.S.C. § 3142(g), Judge Cave found that the Government had "met its burden to establish that there are no conditions that [she could] impose that [would] reasonably assure [Hardy's] appearance and the safety of the community," and ordered him detained.  *Id.* at 20:5–9.

Hardy appealed Judge Cave's detention order by letter dated May 31, 2024.  Def. Mem., ECF No. 10.

**LEGAL STANDARD**

A district court reviews *de novo* a magistrate judge's decision to release or detain a defendant.  *See United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985); *United States v. Jones*, 566 F. Supp. 2d 288, 289–90 (S.D.N.Y. 2008).

Under the Bail Reform Act, a defendant shall be detained if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Where, as here, the defendant is charged with a crime enumerated in 18 U.S.C. § 3142(e)(3)(B), a rebuttable presumption arises that no condition or combination of conditions will reasonably assure his appearance as required and the safety of the community.

The defendant "bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight."  *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).  Satisfying the burden of production does not eliminate the presumption favoring detention; it "remains a factor to be considered among those weighed by the district court."  *Id.*  At all times, "the [G]overnment retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community," and "by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight."  *Id.*

In determining whether the presumption has been rebutted, courts consider the factors set forth in 18 U.S.C. § 3142(g): (1) "the nature and circumstances of the offense charged," including whether the offense involves a firearm; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person," including their character, physical and mental condition, and past conduct; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

3

**DISCUSSION**

Having considered Hardy's submission, the Government's opposition papers, the bail report from Pretrial Services, Judge Cave's bail decision, the arguments made by counsel at the June 5, 2024 hearing, and security videos of the Subway Robbery and the Dunkin Robbery, the Court AFFIRMS Judge Cave's order.

I.    <u>Danger to the Community</u>

The Court agrees with Judge Cave that the Government has shown by clear and convincing evidence that Hardy is a danger to the community given the nature and circumstances of the offense.  Hardy is alleged to have committed four armed robberies—and attempted to commit a fifth—in just seventeen days.  Compl. ¶ 9.  He carried a gun and brandished it at employees during each robbery.[1]  *See id.*; *see also United States v. English*, 629 F.3d 311, 315, 322 (2d Cir. 2011) (affirming district court's finding that the presence of a gun indicates "danger to the community").  Further, the weight of the evidence against Hardy is substantial.  Security camera footage places Hardy at the scene of the robberies, and Hardy has admitted to his commission of the crimes, including his use of firearms.  Compl. ¶¶ 9, 11.

It is true that Hardy does not have a significant criminal history, and it appears that his behavior is "aberrational."  Def. Mem. at 1.  However, Hardy confessed to eight other armed robberies after his arrest, and told officers that he "just kept going" after robbing his first 7-Eleven.  Gov. Mem. at 10.  Hardy also quickly resumed his spree after an employee seized his

---

[1] At the bail appeal hearing, the parties disputed whether Hardy also "push[ed] away a female customer who was trying to intervene" during the Subway Robbery.  Appeal Tr. at 6:7–7:2.  Having reviewing the footage, which appears to show Hardy merely "plac[ing] his arm out to create space," the Court agrees with defense counsel's characterization of the events.  *Id.* at 6:24–25.

However, the Court disagrees with the defense that Hardy did not "attempt[] to assault" the employee who wrestled away his firearm during the Dunkin Robbery.  *Id.* at 7:6–9; *see* Gov. Mem. at 5–7.  The video footage of that incident appears to show Hardy rushing past the counter in pursuit of the employee and leaping at another employee in his path.  Although the Government concedes that no one was injured during the Dunkin Robbery, Hearing Tr. at 17:19–22, the Court cannot conclude that Hardy posed no physical danger to the employees.

firearm during the Dunkin Robbery, robbing another 7-Eleven with a different firearm just six days later.[2]  Hearing Tr. at 21:8–15; *see* Gov. Mem. at 9.  In all, Hardy has confessed to committing thirteen robberies or attempted robberies within the span of a month—a pattern of behavior that the Government aptly describes as "addiction[-]like."  *Id.* at 11.  The Court shares Judge Cave's concern that Hardy would continue this conduct if released.  Hearing Tr. at 22:18–23:6.

Hardy also claims that the gun possessed during the April 10 robbery was not loaded and argues that this diminishes his potential danger to the community.  But on two other occasions, Hardy was captured on camera "racking the slide of his gun . . . while out of view of the store clerks, which suggests that he was not going through the motions for show."  Gov. Mem. at 10. Although the firearm that was ultimately seized from Hardy's car was unloaded, the Government notes that it was recovered in a bag also containing a magazine with fifteen rounds of ammunition, which Hardy could have used to quickly load the gun.  *Id.* at 9.  The Court finds, therefore, that the Government has met its burden to show by clear and convincing evidence that Hardy's proposed bail conditions would not adequately assure the community's safety.

II.    Risk of Flight

The Court further finds that the Government has met its burden to prove that Hardy poses a risk of flight.  Hardy contends that if released, he would stay with his long-term girlfriend in Manhattan, and that he has a tattoo business that he "takes seriously."  Def. Mem. at 1. However, Pretrial Services reported that Hardy's housing situation is unstable, 6/4/2024 Report at 2, and Hardy told investigators that he was unemployed and his tattoo business was "not working," Gov. Mem. at 11 n.2.  Hardy also faces serious charges, including a firearms offense

---

[2] As Judge Cave noted, Hardy's quick procurement of another gun after the Dunkin Robbery suggests that Hardy may have "ready access to firearms . . . in the community."  Hearing Tr. at 21:8–15.

with a seven-year mandatory minimum sentence.  *See* 18 U.S.C. § 924(c)(1)(A)(ii).  Under these

circumstances, the Court agrees with Judge Cave's assessment that Hardy poses a risk of flight

that would not be adequately remediated by home detention or other restrictions.[3]

       Accordingly, Judge Cave's detention order is AFFIRMED.

       SO ORDERED.

Dated: July 2, 2024
      New York, New York

_____
       ANALISA TORRES
      United States District Judge

---

[3] The Court acknowledges Hardy's arguments about the "abhorrent" conditions at the Metropolitan Detention Center, which have been thoroughly catalogued by this Court and others.  Def. Mem. at 5–6; *see, e.g.*, *United States v. Chavez*, No. 22 Cr. 303, 2024 WL 50233, at *1–7 (S.D.N.Y. Jan. 4, 2024) (describing the "dreadful" conditions at MDC, including inhumane lockdown practices, "egregiously slow" medical care, and physical decrepitude including mold and vermin); *United States v. Boyd*, No. 21 Cr. 486, 2022 WL 790771 (S.D.N.Y. Feb. 3, 2022) (noting frequent "staffing issues, quarantines due to COVID-19, and lockdowns due to security issues" at MDC); Tr. At 33:10–24, *United States v. Arias*, No. 22 Cr. 495 (S.D.N.Y. May 5, 2023), ECF No. 34 (noting that it is no longer "factually disputable that [MDC] is just an inhospitable, terrible place to be.").  These conditions do not outweigh the danger to the community and risk of flight posed by Hardy's release at this time.